OPINION
{¶ 1} On December 5, 2003, the Delaware County Grand Jury indicted appellant, Douglas Stillman, on two counts of attempted murder in violation of R.C. 2923.02/2903.01, one count of felonious assault in violation of R.C. 2903.11, two counts of rape in violation of R.C. 2907.02 and three counts of kidnapping in violation of R.C. 2905.01 (Case No. 03CRI12-566).
 {¶ 2} On January 23, 2004, the Delaware County Grand Jury further indicted appellant on one count of tampering with evidence in violation of R.C. 2921.12 and one count of intimidation of a witness in violation of R.C. 2921.04 (Case No. 04CRI01-021).
 {¶ 3} On May 14, 2004, a bill of information was filed charging appellant with domestic violence in violation of R.C.2919.25 (Case No. 04CRI05-185). All charges arose from incidents involving appellant's live-in girlfriend, Ashley Parrott. The incidents started on November 29, 2003 and continued throughout the evening into November 30, 2003.
 {¶ 4} All three cases proceeded to trial on May 18, 2004. Prior to trial, the state dismissed one count of rape and one count of kidnapping. The jury found appellant guilty of the felonious assault count, the remaining rape count, the two remaining kidnapping counts, the tampering with evidence count, the intimidation of a witness count and the domestic violence charge. The jury found appellant not guilty of the attempted murder counts.
 {¶ 5} By judgment entry filed June 29, 2004, the trial court sentenced appellant to eight years on the felonious assault, six years on the rape, five years on the kidnapping, four years on the tampering, six months on the intimidation and twelve months on the domestic violence. The eight years on the felonious assault and the four years on the tampering were ordered to be served consecutively for a total of twelve years. The remaining sentences were ordered to be served concurrently to each other and to the twelve year sentence.
 {¶ 6} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I {¶ 7} "The verdicts of guilty as to the charges of felonious assault and domestic violence are against the manifest weight of the evidence."
 II {¶ 8} "The verdict of guilty as to the charge of rape is against the manifest weight of the evidence and contrary to law."
 III {¶ 9} "The verdict of guilty as to the charges of kidnapping are against the manifest weight of the evidence and contrary to law"
 IV {¶ 10} "The verdict of guilty as to the charge of tampering with evidence is not supported by sufficient evidence and is contrary to law."
 V {¶ 11} "The trial court committed prejudicial error when it permitted the joinder, for trial purposes, of the tampering with evidence charge with the charges of rape, felonious assault, kidnapping and attempted murder."
 VI {¶ 12} "The trial court committed prejudicial error when it permitted a sexual assault nurse examiner to give expert testimony as to strangulation and other matters outside her expertise."
 VII {¶ 13} "The trial court committed error in classifying the appellant as an aggravated sexually oriented offender in that the procedure which was used was improper and further that chapter 2950, the sexual predator law, as applied to this appellant is unconstitutional."
 VIII {¶ 14} "The trial court's sentencing of the appellant to the maximum term of imprisonment for felonious assault is contrary to law."
 IX {¶ 15} "The trial court's sentencing of the appellant to consecutive sentences on the felonious assault and the tampering with evidence is contrary to law."
 I, II, III, IV {¶ 16} These assignments of error challenge the jury's verdict as being contrary to law and against the manifest weight of the evidence.
 {¶ 17} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Martin (1983), 20 Ohio App.3d 172, 175. See also,State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175.
 {¶ 18} Appellant complains of the following convictions, to wit: felonious assault in violation of R.C. 2903.11(A)(1) which states, "No person shall knowingly * * * [c]ause serious physical harm to another or to another's unborn;" rape in violation of R.C. 2907.02(A)(2) which states, "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force;" and kidnapping in violation of R.C. 2905.01(A)(3) which states:
 {¶ 19} "No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes: * * * To terrorize, or to inflict serious physical harm on the victim or another."
 {¶ 20} Appellant also complains of the convictions for domestic violence in violation of R.C. 2919.25(B) which states, "No person shall recklessly cause serious physical harm to a family or household member;" and tampering with evidence in violation of R.C. 2921.12(A)(2) which states:
 {¶ 21} "No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following: Make, present, or use any record, document, or thing, knowing it to be false and with purpose to mislead a public official who is or may be engaged in such proceeding or investigation, or with purpose to corrupt the outcome of any such proceeding or investigation."
 FELONIOUS ASSAULT AND DOMESTIC VIOLENCE {¶ 22} Appellant's challenges to the felonious assault and domestic violence convictions center upon the argument that there was insufficient evidence of serious physical harm to substantiate the verdict.
 {¶ 23} R.C. 2901.01(5)(A) defines "serious physical harm to persons" as, "Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment."
 {¶ 24} Jeffrey Mitchell, M.D., an emergency room physician at St. Ann's Hospital, treated Ms. Parrott immediately following the incidents. T. at 152-153. Dr. Mitchell testified to Ms. Parrott's physical appearance as a person who "was clearly beaten about the face; her face was swollen; it was black and blue." T. at 156. He also stated she "had scratches and abrasions here and there; she had a cut on her hand. She seemed quite upset." T. at 156.
 {¶ 25} David Watson, M.D., an emergency room physician at Grady Memorial Hospital, examined Ms. Parrott the next day on December 1, 2003. T. at 130-131. Ms. Parrott had come in complaining of dizziness and increased pain in her right shoulder. T. at 131. Dr. Watson diagnosed "facial bruising, ecchymosis, and trauma to the eye; perforated right ear drum." Id. He also diagnosed right shoulder strain or separation amounting to grade one. T. at 131, 135. The next day, December 2, 2003, Dr. Watson saw Ms. Parrott again, this time for painful swallowing, associated with post-traumatic strangulation. T. at 136, 140-141. Dr. Watson opined Ms. Parrott's injuries caused her substantial suffering. T. at 147.
 {¶ 26} A series of photographs of Ms. Parrott were admitted into evidence. See, State's Exhibits 31-38. All the photographs depicted a severely battered person.
 {¶ 27} Ms. Parrott described her injuries and testified the soreness of her throat related to the strangulation lasted for four days, the injuries to her face lasted four weeks, she wore a sling for her separated shoulder for two weeks and the bruising of her torso lasted two weeks. She was off work for a month. T. at 305-306.
 {¶ 28} From the above evidence, we find there was sufficient evidence for the jury to conclude Ms. Parrott suffered serious physical harm.
 RAPE {¶ 29} Appellant forced four fingers in her vagina at least two times. T. at 297-298. Appellant argues the insertion of his fingers into Ms. Parrott's vagina was consensual; therefore, he should not have been convicted of rape. During the beating of Ms. Parrott, appellant accused her of being unfaithful. He claims her response amounted to consent:
 {¶ 30} "Q. Okay. And what did you tell him?
 {¶ 31} "A. That I was not cheating on him.
 {¶ 32} "Q. Did you tell him anything else?
 {¶ 33} "A. I said, if you want to know if I'm cheating on you, then pull down the pants and check.
 {¶ 34} "Q. And check. And I think your testimony was, you can't remember whether you pulled down your pants or whether Doug pulled down your pants?
 {¶ 35} "A. I don't recall if he did it.
 {¶ 36} "Q. Okay. But you definitely told him, `Go ahead and check
 {¶ 37} "A. Yes.
 {¶ 38} "Q. And then he did check?
 {¶ 39} "A. Yes." T. at 321.
 {¶ 40} Ms. Parrott testified she had passed out from the beatings during this part of the attack. T. at 298. Ms. Parrott admitted to being drunk. T. at 310-320, 323. She testified she did not expect the forceful vaginal penetration nor did she consent to it. T. at 323-324.
 {¶ 41} The jury as the ultimate trier of facts could have concluded that Ms. Parrott had not given her consent or had been unable to give consent. We find the evidence is sufficient to support either conclusion.
 KIDNAPPING {¶ 42} Appellant argues there was no evidence of restraint by force or threat with the purpose to terrorize or inflict serious physical harm. We disagree with this argument in light of our decision on the evidence presented as to serious physical harm supra.
 TAMPERING WITH EVIDENCE {¶ 43} Appellant argues the sending of letters to Ms. Parrott persuading her to testify differently at trial was not tampering with evidence under the plain reading of the statute, R.C.2921.12(A)(2).
 {¶ 44} We read R.C. 2921.12(A)(2) to include acts such as those of appellant, "Make, present, or use any * * * document [letter], * * * knowing it to be false [untruthful report of the assault] and with purpose to mislead a public official [court officials, prosecution or jury] who is or may be engaged in such proceeding [court trial] * * *, or with purpose to corrupt the outcome of any such proceeding * * *."
 {¶ 45} One letter instructed Ms. Parrott to say "you were drunk when they questioned you the officers got you all confused. * * * Call my attorney tell him you were drunk/confused when you gave statements now you remember that I didn't, hit you, rape you, or kidnap you." State's Exhibit 12. Several letters coached Ms. Parrott to state her injuries were the result of an attack at Max and Erma's and she continued the argument and that is why the police were called. State's Exhibits 12, 14, 19. Appellant encouraged Ms. Parrott by stating, "Please think about a way to get me out . . . You'll be glad you did!" and "I really wish you'd reconsider fixing the story." State's Exhibit 21.
 {¶ 46} Under a strict reading of subsection (A)(2), we find it was not against the manifest weight of the evidence to find the letters that coached Ms. Parrott to lie to defense counsel, the police, the prosecution and the trial court violated R.C.2921.12(A)(2).
 {¶ 47} Assignments of Error I, II, III and IV are denied.
 V {¶ 48} Appellant claims the trial court erred in permitting joinder of the tampering count to the counts of felonious assault, rape and domestic violence. We disagree.
 {¶ 49} Crim.R. 8(A) governs joinder of offenses and states the following:
 {¶ 50} "Two or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct."
 {¶ 51} Crim.R. 14 governs relief from prejudicial joinder and states the following:
 {¶ 52} "If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder for trial together of indictments, informations or complaints, the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires. In ruling on a motion by a defendant for severance, the court shall order the prosecuting attorney to deliver to the court for inspection pursuant to Rule 16(B)(1)(a) any statements or confessions made by the defendants which the state intends to introduce in evidence at the trial."
 {¶ 53} The evidence on the tampering count established appellant attempted to convince Ms. Parrott to recant her version of the facts and to fabricate an assault incident to account for her physical injuries.
 {¶ 54} We find that coaching a witness and asking a witness to lie falls within the language of Crim.R. 8, "two or more acts or transactions connected together or constituting parts of a common scheme or plan."
 {¶ 55} Further, from our review of the letters, appellant made admissions of guilt on the felonious assault offense that could have been admissible as an admission against interest. See, Evid.R. 801(D)(2).
 {¶ 56} Upon review, we find no showing of undue prejudice from the joinder.
 {¶ 57} Assignment of Error V is denied.
 VI {¶ 58} Appellant claims the trial court erred in permitting Nurse Ruth Downing to testify on the issue of strangulation. We disagree.
 {¶ 59} The admission or exclusion of evidence lies in the trial court's sound discretion. State v. Sage (1987),31 Ohio St.3d 173. In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217. We note harmless error is described as "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Crim.R. 52(A). Overcoming harmless error requires a showing of undue prejudice or a violation of a substantial right.
 {¶ 60} Evid.R. 702 provides for expert testimony if it aids the trier of fact in determining the evidence:
 {¶ 61} "A witness may testify as an expert if all of the following apply:
 {¶ 62} "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 {¶ 63} "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 {¶ 64} "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:
 {¶ 65} "(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;
 {¶ 66} "(2) The design of the procedure, test, or experiment reliably implements the theory;
 {¶ 67} "(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result."
 {¶ 68} Ms. Parrott testified appellant choked her, and the choking caused her to blackout. T. at 294. The record on Ms. Parrott's testimony established a strangulation.
 {¶ 69} The testimony of Nurse Downing included an explanation of the difference between choking and strangulation and the methodology of strangulation. T. at 210-212. She used a diagram of the head to explain strangulation. See, State's Exhibit 11. She also talked to and examined Ms. Parrott in the emergency room on December 2, 2003, and took photographs of her. T. at 216-218, 224.
 {¶ 70} Defense counsel specifically objected to the degree of seriousness of the strangulation injury:
 {¶ 71} "Q. Now, based on your experience in and out of consciousness repeatedly, losing control of her bowels, with ten being death and one being the lightest possible strangulation there could be, could you describe for the jury, characterize how serious this would have been?
 {¶ 72} "Mr. Long: Objection.
 {¶ 73} "It is very serious, given that many patients may die up to 36 hours after a strangulation and in particular a strangulation injury, even with no external injury to their body, and considering the injuries that she did have, and the loss of consciousness, I would have to say a nine." T. at 227-228.
 {¶ 74} The next question posed was whether Ms. Parrott was close to death during the assault. T. at 228. Based upon this question, we find the purpose for the complained of testimony was as evidence for the attempted murder count. Regardless of the admissibility of the question, the jury found appellant not guilty of attempted murder. We therefore conclude any error would have been harmless error.
 {¶ 75} Assignment of Error VI is denied.
 VII {¶ 76} Appellant claims the trial court's classification of him as an aggravated sexual offender was improper and R.C. 2950 et seq. is unconstitutional. We disagree.
 {¶ 77} Appellant was convicted of rape pursuant to R.C.2907.02(A)(2), an aggravated sexually oriented offense. See, R.C.2950.01.
 {¶ 78} R.C. 2950.09 governs classification of sexual offenders. Subsection (B)(4) states the following in pertinent part:
 {¶ 79} "In any case in which the sexually oriented offense in question is an aggravated sexually oriented offense, the court shall specify in the offender's sentence and the judgment of conviction that contains the sentence that the offender's offense is an aggravated sexually oriented offense."
 {¶ 80} The trial court was mandated pursuant to the above statute to classify appellant as an aggravated sexually oriented offender.
 {¶ 81} Appellant challenges the constitutionality of R.C. 2950 et seq., and cites cases in support. State v. Anthony,
Hamilton App. No. C-030510, 2004-Ohio-3894; State v. Boeddeker
(February 13, 1998), Hamilton App. No. C-970471. The challenges in these cases were based upon the former statutes as to registration and not as subsequently amended by the Ohio General Assembly. We find no showing of unconstitutionality sub judice.
 {¶ 82} Assignment of Error VII is denied.
 VIII, IX {¶ 83} These assignments challenge the sentences. Appellant claims the United States Supreme Court's opinion in Blakely v.Washington (June 24, 2004), 124 S.Ct. 2531, prohibits maximum and/or consecutive sentences without an independent finding by the jury of facts relative to enhanced sentencing.
 {¶ 84} In State v. Iddings (November 8, 2004), Delaware App. No. 2004CAA06043, ¶ 12, this court examined the Blakely
decision and found it "do[es] not obviate entirely judicial discretion in sentencing a criminal defendant. Rather, the trial courts maintain discretion to select a sentence within the range prescribed by the legislature." This court further held at ¶ 20-21:
 {¶ 85} "None of the factors set forth in either 2929.13(B) or 2929.14(B) subject an offender to a prison term in excess of what the law provides as the maximum sentence for a felony of the fourth or fifth degree. The Legislature has simply codified factors that sentences courts have always considered when deciding to sentence a defendant within the range permitted by statute. The fact that the legislature has chosen certain of the traditional sentencing factors and dictated the precise weight to be given those factors does not evade the requirements of the Fifth and Sixth Amendments. Harris v. United States, supra,536 U.S. at 568, 122 S.Ct. at 2420. (Citing McMillan v.Pennsylvania (1986), 477 U.S. 79, 106 S.Ct. 2411)."
 {¶ 86} Pursuant to this court's opinion in Iddings, we find the imposition of maximum sentences is not an exceptional sentence under Blakely.
 {¶ 87} As for the consecutive nature of the sentences, appellant agrees the trial court stated the requisite findings pursuant to R.C. 2929.14(E)(4) on the record and in the judgment entry on sentence. Appellant's Brief at 25. Appellant argues such findings require a jury's finding pursuant to Blakely. Given this court's opinion in Iddings, we disagree.
 {¶ 88} Upon review, we find the trial court did not err in sentencing appellant.
 {¶ 89} Assignments of Error VIII and IX are denied.
 {¶ 90} The judgment of the Court of Common Pleas of Delaware County, Ohio is hereby affirmed.
Farmer, J. Gwin, P.J. and Wise, J. concur.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Delaware County, Ohio is affirmed.