[Cite as *State v. Cartwright*, 2013-Ohio-2156.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

PREBLE COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO. CA2012-03-003 |
| | : | O P I N I O N |
| - vs - | | 5/28/2013 |
| | : | |
| TIMOTHY S. CARTWRIGHT, | : | |
| Defendant-Appellant. | : | |


CRIMINAL APPEAL FROM PREBLE COUNTY COURT OF COMMON PLEAS
Case No. 11-CR-10782


Martin P. Votel, Preble County Prosecuting Attorney, Kathryn M. Worthington, 101 East Main Street, Eaton, Ohio 45320, for plaintiff-appellee

Shawn P. Hooks, 131 North Ludlow Street, Suite 630, Dayton, Ohio 45402, for defendant-appellant


**HENDRICKSON, P.J.**

{¶ 1} Defendant-appellant, Timothy Cartwright, appeals from his conviction in the Preble County Common Pleas Court on multiple sex offenses, including one count of rape in violation of R.C. 2907.02(A)(1)(b) and two counts of rape in violation of R.C. 2907.02(A)(2). For the reasons that follow, we affirm the judgment of the trial court except for the portion imposing on appellant "a mandatory sentence of life without parole," for his convictions on

two counts of rape in violation of R.C. 2907.02(A)(2), and remand this matter for resentencing on those two counts.

{¶ 2} In 2011, appellant's daughter, W.C., who was born in 1997, told her friends at school that her father was sexually abusing her. W.C. repeated this to the school principal the following day. The principal contacted the Preble County Sheriff's Office. Deputy Matthew Lunsford came to the school and interviewed W.C., who told him that appellant had been sexually abusing her for two years and that the last time it had happened was about six weeks ago. Deputy Lunsford contacted appellant who voluntarily came to the police station for an interview. Appellant denied W.C.'s allegations.

{¶ 3} Appellant was indicted on one count of rape in violation of R.C. 2907.02(A)(1)(b), a first-degree felony (Count One); two counts of rape in violation of R.C. 2907.02(A)(2), a first-degree felony (Counts Two and Five); two counts of sexual battery in violation of R.C. 2907.03(A)(5), a second-degree felony (Counts Three and Six); and one count of gross sexual imposition in violation of R.C. 2907.05(A)(4), a third-degree felony (Count Four). Each count contained a sexually violent predator (SVP) specification under R.C. 2941.148.

{¶ 4} At a bench trial, W.C. testified that appellant began sexually abusing her when she was 11 and that the abuse continued for two years. W.C. testified that the acts occurred in different places in the home and sometimes even when her brothers, ages 16 and 18, or her mother, who is legally blind and can only see light, were in the home. W.C. testified that appellant penetrated her vagina digitally, orally and with his penis and that he used condoms. W.C. testified that she had not told anyone about the sexual abuse earlier because she knew that doing so "could destroy families" and that "my family probably even wouldn't try to hear my side of the story or believe me. And I didn't want to lose my mom because me and her

were pretty close." When she was asked what finally had led her to tell others about the sexual abuse, W.C. answered, "I just wasn't sure if I could put up with it anymore."

{¶ 5} The state presented expert testimony from Dr. Lori Vavul-Roediger, M.D., who is a specialist in pediatric medicine with a subspecialty in the field of child abuse pediatrics. Dr. Vavul-Roediger examined W.C. shortly after she reported the sexual abuse to the police and found that W.C.'s hymen was normal and showed no signs of forced sexual acts. Dr. Vavul-Roediger testified that, in her experience, less than 5% of people who report sexual abuse show signs of penetration trauma to the hymen or anus. Dr. Vavul-Roediger also testified that, under her "basic understanding" of psychology, children react differently to sexual maltreatment, and children do not report such abuse due to embarrassment, fear, threats and bribes.

{¶ 6} Appellant testified in his own defense. He denied W.C.'s allegations, claiming his daughter was retaliating against him because she had gotten into trouble with him over such issues as having to do household chores, her usage of her laptop computer and lying about where she was going. Appellant acknowledged that, when W.C. testified, he stared at her for "pretty much the bulk of her testimony" but that when his wife testified, he did not look at her. Appellant explained that he got to see his wife every day, but that he had not seen W.C., whom he called his "princess," in ten months. When asked about the fact that he still called W.C. his "princess," appellant stated, "Well, she's still my princess. I still love her. But quite frankly, at this point I kind of hate her, too. I know it sounds conflicting, but it's not."

{¶ 7} The trial court found appellant guilty of each of the offenses listed in the six-count indictment. The trial court then held a hearing on the SVP specifications. Deputy Lunsford was the sole witness at the SVP hearing. He testified, without objection, about the contents of a report from the Dayton Police Department that showed appellant was molested by his father when he was 6 and that appellant admitted to sexually abusing his sister in the

1980s when he was 16. The trial court found appellant guilty of the SVP specifications, explaining the reasons for its finding, as follows:

> The Court * * * bases that finding on all the testimony offered during the trial, most of which would be the victim's testimony, the fact that this conduct happened over a two-year period of time, so he's clearly repeated the conduct, according to the victim, if my memory is right, three times a month for two years.
>
> Further, the victim admitted when he was a teenager himself having sexually abused his sister. That was part of the supplemental evidence that was offered during the hearing after the trial. And so this is conduct that did not just start two and a half years ago or so but earlier.

{¶ 8} The trial court sentenced appellant to a mandatory sentence of life without parole for his statutory rape conviction on Count One, a mandatory sentence of life without parole for both of his forcible rape convictions on Counts Two and Five, a mandatory sentence of eight years to life for his sexual battery conviction on Count Three, a mandatory sentence of two years to life for his gross sexual imposition conviction on Count Four, and a mandatory sentence of two years to life for his sexual battery conviction on Count Six. The trial court ordered that "[a]ll of the above sentences shall run concurrently with each other." (Bold emphasis deleted.)

{¶ 9} Assignment of Error No. 1:

{¶ 10} "THERE WAS PLAIN ERROR IN ADMITTING HEARSAY TESTIMONY DURING THE TRIAL ON THE SEXUALLY VIOLENT PREDATOR SPECIFICATION. THE OFFICER SHOULD NOT HAVE BEEN PERMITTED TO TESTIFY ABOUT CONTENTS OF A POLICE REPORT FROM ANOTHER COUNTY IN SUPPORT OF THE FINDING."

{¶ 11} Assignment of Error No. 2:

{¶ 12} "COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO THE INTRODUCTION OF HEARSAY EVIDENCE WHICH WAS THE SOLE BASIS FOR

SUPPORTING THE FINDING OF GUILTY ON THE SEXUALLY VIOLENT PREDATOR SPECIFICATION."

{¶ 13} Assignment of Error No. 3:

{¶ 14} "THE TRIAL COURT ABUSED ITS DISCRETION BY ALLOWING EXPERT OPINION TESTIMONY RELATING TO CHILD PSYCHOLOGY WHEN THE EXPERT WAS NOT QUALIFIED TO RENDER THOSE OPINIONS."

{¶ 15} Assignment of Error No. 4:

{¶ 16} "THE TRIAL COURT ABUSED ITS DISCRETION IN PERMITTING THE STATE TO INQUIRE INTO EVIDENCE ADDUCED FROM A POLICE REPORT THAT IT FAILED TO PROPERLY DISCLOSE UNTIL THE LAST BUSINESS DAY BEFORE TRIAL WHEN IT HAD BEEN IN CONTROL OF THAT REPORT FOR TEN MONTHS."

{¶ 17} Assignment of Error No. 5:

{¶ 18} "THE VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHEN THERE WAS ABSOLUTELY NO EVIDENCE BEFORE THE COURT TO CORROBORATE THE ALLEGED VICTIM'S STORY, AND THERE WERE INCONSISTENCIES INHERENT IN THE ALLEGED VICTIM'S STORY."

{¶ 19} Assignment of Error No. 6:

{¶ 20} "THE SENTENCE OF THR [*sic*] TRIAL COURT IS CONTRARY TO LAW AND SHOULD BE REVERSED."

{¶ 21} In his first assignment of error, appellant argues the trial court erred during the SVP specifications hearing by allowing Deputy Lunsford to testify about the contents of a police report that was inadmissible hearsay. *See State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, ¶ 111. Appellant acknowledges that he failed to object to Deputy Lunsford's testimony but contends that the trial court's error in allowing the testimony and the police report constitute "plain error," since the police report was the only evidence the state

presented to show the existence of one of the factors listed in R.C. 2971.01(H)(2), which permitted the trial court to determine that he was a sexually violent predator, and therefore, to convict him of the SVP specifications. We find appellant's argument unpersuasive.

{¶ 22} In order to prevail on a claim of plain error, a criminal defendant must show that the trial court committed some error regarding a constitutional provision, statute, case law or rule; the error was obvious; and that, but for the alleged error, the outcome of the trial or proceeding clearly would have been otherwise. *See, e.g.*, *State v. Hale*, 119 Ohio St.3d 118, 126, 2008-Ohio-3426, ¶ 53.

{¶ 23} R.C. 2941.148, which governs SVP specifications, provides in relevant part:

(A)(1) The application of Chapter 2971. of the Revised Code to an offender is precluded unless one of the following applies:

(a) The offender is charged with a violent sex offense, and the indictment, count in the indictment, or information charging the violent sex offense also includes a specification that the offender is a sexually violent predator * * *.

* * *

(B) In determining for purposes of this section whether a person is a sexually violent predator, all of the factors set forth in divisions (H)(1) to (6) [sic] of section 2971.01 of the Revised Code that apply regarding the person may be considered as evidence tending to indicate that it is likely that the person will engage in the future in one or more sexually violent offenses.

R.C. 2971.01(H) states in relevant part:

(H)(1) "Sexually violent predator" means a person who, on or after January 1, 1997, commits a sexually violent offense and is likely to engage in the future in one or more sexually violent offenses.

(2) For purposes of division (H)(1) of this section, any of the following factors may be considered as evidence tending to indicate that there is a likelihood that the person will engage in the future in one or more sexually violent offenses:

* * *

(b) The person has a documented history from childhood, into the juvenile developmental years, that exhibits sexually deviant behavior.

(c) Available information or evidence suggests that the person chronically commits offenses with a sexual motivation.

{¶ 24} The trial court cited two reasons for finding appellant guilty of the SVP specifications. The first was based on the testimony offered during the trial which showed that this conduct repeatedly happened over a two-year period of time. This reason amounts to a determination by the trial court that "[a]vailable information or evidence suggests that [appellant] chronically commits offenses with a sexual motivation[,]" and therefore the trial court found the existence of the factors listed under R.C. 2971.01(H)(2)(c). Under R.C. 2971.01(H)(1), this factor may be considered as evidence tending to indicate that there is a likelihood that appellant will engage in the future in one or more sexually violent offenses.

{¶ 25} The trial court's second reason for finding appellant to be a sexually violent predator is appellant's admission that when he was a teenager he sexually abused his sister. This additional reason represents a finding by the trial court that the state established the factor listed under R.C. 2971.01(H)(2)(b), i.e., "[t]he person has a documented history from childhood, into the juvenile developmental years, that exhibits sexually deviant behavior." This factor may also may be considered as evidence tending to indicate that there is a likelihood that appellant will engage in the future in one or more sexually violent offenses." R.C. 2971.01(H)(1).

{¶ 26} The hearsay argument regarding the Dayton Police Department report only challenges the evidence used to establish the additional factor cited by the trial court in finding appellant guilty of the sexual predator specifications. However, appellant's hearsay argument does not challenge the evidence presented at trial which the trial court found established its first reason for finding appellant guilty of the SVP specifications, i.e., for

finding appellant chronically commits offenses with a sexual motivation. R.C. 2971.01(H)(2)(c).

{¶ 27} Critically, only one of the factors listed in R.C. 2971.01(H)(2)(a)-(f) had to be shown for the trial court to find that appellant is a sexually violent predator. *See State v. Williams*, 8th Dist. No. 80615, 2002-Ohio-4423, ¶ 54 (finding that, while none of the specific factors listed under R.C. 2971.02(H)(2)(a)-(e) pertained to Williams, the catch-all provision in R.C. 2971.02(H)(2)(f) did apply and there was evidence to support the trial court's determination that Williams was a sexually violent predator).

{¶ 28} The trial court found the factor in R.C. 2971.01(H)(2)(c) to be present and then found an additional factor in R.C. 2971.01(H)(2)(b) to be present. Appellant challenges the admissibility of the evidence relevant to the trial court's finding that the R.C. 2971.01(H)(2)(*b*) factor exists. However, the challenged evidence does not affect the trial court's finding that the factor listed in R.C. 2971.01(H)(2)(*c*) exists. Under these circumstances, appellant has failed to show that the outcome of the proceedings would have been clearly different but for the alleged error, and therefore, he cannot prevail on his plain error claim.

{¶ 29} Accordingly, appellant's first assignment of error is overruled.

{¶ 30} In his second assignment of error, appellant argues his defense counsel provided him with ineffective assistance by failing to object to the introduction of the police report discussed in the first assignment of error. However, appellant cannot prevail on his ineffective assistance claim because, even without the objectionable police report, the outcome of appellant's trial would not have been different. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984).

{¶ 31} Consequently, appellant's second assignment of error is overruled.

{¶ 32} In his third assignment of error, appellant asserts the trial court erred by allowing Dr. Vavul-Roediger to provide expert testimony regarding the subject of child

psychology when she was not qualified to render such an opinion. Appellant argues that while Dr. Vavul-Roediger was qualified to give an expert opinion on the physiology of a child who has been sexually abused, she was not qualified to testify about the reasons why a child might delay in disclosing sexual abuse, because this would require "some sort of qualifications in child psychology," which she was not shown to possess. We find this argument unpersuasive.

{¶ 33} Evid.R. 702 states in pertinent part:

A witness may testify as an expert if all of the following apply:

(A)     The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

(B)     The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

(C)     The witness' testimony is based on reliable scientific, technical, or other specialized information.

{¶ 34} While an expert witness is not required to be the best witness on the particular subject in question, his or her testimony must assist the trier of fact in the search for the truth. *Nichols v. Hanzel*, 110 Ohio App.3d 591, 597-598 (4th Dist.1996). A witness may be qualified to testify as an expert on one subject but not qualified to testify as an expert on another related subject. *Campbell v. The Daimler Group, Inc.*, 115 Ohio App.3d 783, 793 (10th Dist.1996). However, the question of whether a witness possesses the necessary knowledge, skill, experience, or training to testify as an expert in a given subject matter is a question left to the trial court's sound discretion. *Id.*

{¶ 35} Dr. Vavul-Roediger's curriculum vitae shows that she has extensive knowledge, training and experience in forensic pediatrics or child abuse pediatrics. She is a member of the Ohio Chapter of the American Academy of Pediatrics and its section on child abuse and

neglect, and the American Professional Society on the abuse of children. She has also been a faculty member and clinical instructor at various universities and has testified as an expert in 60 to 100 cases in both criminal and juvenile court proceedings.

{¶ 36} Dr. Vavul-Roediger testified that she has gained, through her training and experience, "some basic understanding of psychology in the area of children[.]" Dr. Vavul-Roediger was permitted to testify, over appellant's objection, as follows:

> [J]ust in my training and, obviously, the experiences I've had with other patients speaking generally, not with regard to this child necessarily, children obviously, and as well adolescents, for a variety of reasons my [*sic*] delay their disclosure about maltreatment.
>
> Many times out of embarrassment. Clearly out of fear of the alleged perpetrator. Maybe for being threatened or bribed. Occasionally children, obviously, have been worried that if they tell, they will be in trouble.
>
> Occasionally children and adolescents are fearful what will happen to the alleged perpetrator if they disclose being maltreated. And I feel that most importantly many children simply are fearful of the unknown. What will happen if I do tell.

{¶ 37} A review of Dr. Vavul-Roediger's qualifications, training and experience shows that she was fully qualified to provide expert testimony on the matters about which she testified, and therefore the trial court did not abuse its discretion in allowing her to provide such testimony on those matters.

{¶ 38} In light of the foregoing, appellant's third assignment of error is overruled.

{¶ 39} In his fourth assignment of error, appellant contends the trial court erred by permitting the state to inquire into evidence adduced from a police report that it failed to properly disclose until the last business day before trial, where the state had the report in its possession for ten months before trial. This argument also lacks merit.

{¶ 40} "The granting or overruling of discovery motions in a criminal case rests within the sound discretion of the trial court." *State v. Miller*, 12th Dist. No. CA2002-02-004, 2002-

Ohio-6109, ¶ 19. The state's violation of a rule of discovery constitutes reversible error only if (1) the violation was willful, (2) foreknowledge of the information not disclosed, or not disclosed in a timely manner, would have benefitted the accused in the preparation of his defense, and (3) the accused was prejudiced by the violation. *State v. Scudder*, 71 Ohio St.3d 263, 269 (1994). Crim.R. 16(E)(3) grants wide authority to the trial court in fashioning an appropriate remedy for a discovery violation, and the trial court's decision as to what remedy to grant will not be overturned absent an abuse of that discretion, i.e., where the decision is arbitrary, unconscionable or unreasonable. *State v. Smith*, 12th Dist. No. CA2008-03-064, 2009-Ohio-5517, ¶ 31.

**{¶ 41}** On the Friday before the start of appellant's trial, the state provided appellant with a Computer Aided Dispatch (CAD) report of a call his wife had made to the sheriff's office when she thought appellant had gone missing. The state was unaware of the existence of the CAD report until a police deputy gave it to the prosecutor's office on the same Friday it was disclosed. There was no showing of a willful violation of the state's duties under Crim.R. 16. Moreover, appellant made no attempt to ask for a continuance to allow him to prepare his defense in light of the new information contained in the CAD report. Therefore, appellant cannot show he was prejudiced as a result of the state's alleged untimely disclosure of the report. *State v. Wiles*, 59 Ohio St.3d 71, 80 (1991).

**{¶ 42}** As a result, appellant's fourth assignment of error is overruled.

**{¶ 43}** In his fifth assignment of error, appellant asserts that his convictions on the charges were against the manifest weight of the evidence. We disagree. This case boils down to the credibility of W.C. and appellant. W.C.'s testimony, if believed, is sufficient to sustain every element of every count and specification of which appellant was convicted.

**{¶ 44}** Consequently, appellant's fifth assignment of error is overruled.

{¶ 45} In his sixth assignment of error, appellant contends the trial court erred in sentencing him to life in prison without the possibility of parole for his convictions on two counts of rape in violation of R.C. 2907.02(A)(2). We agree with this argument.

{¶ 46} Sentencing for a conviction of rape in violation of R.C. 2907.02(A) is governed by R.C. 2971.03(A). The trial court was permitted under R.C. 2971.03(A) to impose a life sentence without the possibility of parole on appellant for his conviction on Count One of the indictment. However, the trial court was not permitted to impose a life sentence without the possibility of parole on appellant for his convictions on Counts Two and Five of the indictment for rape in violation of R.C. 2907.02(A)(2). Under R.C. 2971.03(A)(3), the trial court was permitted to sentence appellant for those offenses to an indefinite term of not less than ten years in prison and a maximum term of life imprisonment, but it is not mandatory for a trial court to impose a term of life imprisonment on the offender, and any term of life imprisonment the trial court imposes on the offender is subject to the possibility of parole. *State v. Austin*, 1st Dist. No. C-110804, 2012-Ohio-4232, ¶ 26.

{¶ 47} The state initially conceded error on appellant's sixth assignment of error but then withdrew its concession at oral arguments and requested that we consider the assignment of error in light of *State v. Wagers*, 12th Dist. No. CA2009-06-018, 2010-Ohio-2311. In that case, Wagers was convicted of four counts of rape in violation of R.C. 2907.02(A)(1)(b) and one count of rape in violation of R.C. 2907.02(A)(2), and was sentenced to five concurrent terms of life imprisonment without parole for those offenses. This court affirmed the trial court's judgment, including Wager's sentence for his conviction on one count of rape in violation of R.C. 2907.02(A)(2), for which he received life imprisonment without parole, to be served concurrently with his sentences for his four convictions for rape in violation of R.C. 2907.02(A)(1)(b).

{¶ 48} The state made no attempt at oral argument to explain how *Wagers* should apply to this case in light of R.C. 2971.03(A). In any event, it is clear that under that section, a trial court may not impose a sentence of life imprisonment without the possibility of parole on an offender who has been convicted of rape in violation of R.C. 2907.02(A)(2). To the extent we said anything to the contrary in *Wagers*, either expressly or implicitly, that part of our decision in *Wagers* is hereby overruled.

{¶ 49} Accordingly, appellant's sixth assignment of error is sustained.

{¶ 50} The judgment of the trial court is affirmed except for the portion of the judgment sentencing appellant to life in prison without the possibility of parole on his convictions for two counts of rape in violation of R.C. 2907.02(A)(2). That portion of appellant's sentence is reversed, and this cause is remanded for resentencing in accordance with this opinion.

S. POWELL and RINGLAND, JJ., concur.