[Cite as *State v. Jarvis*, 2015-Ohio-4219.]

STATE OF OHIO         )           IN THE COURT OF APPEALS
                         )ss:       NINTH JUDICIAL DISTRICT
COUNTY OF LORAIN      )

STATE OF OHIO                   C.A. No.      14CA010667

       Appellee

       v.                             APPEAL FROM JUDGMENT
                                       ENTERED IN THE
KRISTOPHER L. JARVIS        COURT OF COMMON PLEAS
                                       COUNTY OF LORAIN, OHIO
       Appellant                 CASE No.     12CR084892

DECISION AND JOURNAL ENTRY

Dated: October 13, 2015

SCHAFER, Judge.

**{¶1}** Defendant-Appellant, Kristopher Jarvis, appeals the judgment of the Lorain County Court of Common Pleas convicting him on two counts of kidnapping and one count of felonious assault and imposing a total prison term of eight years. For the reasons that follow, we affirm the trial court's judgment.

I.

**{¶2}** The Lorain County Grand Jury indicted Jarvis on the following counts: Count I – kidnapping in violation of R.C. 2905.01(B)(1), a felony of the first degree; Count II – kidnapping in violation of R.C. 2905.01(B)(2), a felony of the first degree; Count III – felonious assault in violation of R.C. 2903.11(A)(1), a felony of the second degree; and Count IV – felonious assault in violation of R.C. 2903.11(A)(2), a felony of the second degree.

**{¶3}** These charges stemmed from an incident that occurred during the late evening/early morning hours of January 23-24, 2012. That evening, M.A. reported for work at a

local bar, where she served as a bartender. The bar did not have many patrons, though, so after approximately an hour of working, M.A.'s boss told her to stop working and wait at the bar to see if more customers came. While waiting, M.A. had one alcoholic beverage before Jarvis approached her, purchased her another alcoholic beverage, and engaged her in conversation. M.A. did not know Jarvis's name before this interaction, but recognized his face as a previous patron of the bar. During the course of their conversation, M.A. discussed her need for new housing and Jarvis responded that his mother owned a nearby hotel and that he could possibly arrange for M.A. to live there.

{¶4} Around midnight, M.A. was told that she would not be needed to cover a bartending shift so she decided to leave. After M.A. left the bar, Jarvis approached her as he walked from another nearby bar and asked if she would go to that bar with him. Since she wanted to get contact information for Jarvis's mother, M.A. agreed to go to the other bar with Jarvis. After Jarvis drank one beer at the other bar, the two left from the other bar's rear exit, which led to the parking lot where Jarvis's truck was parked. He insisted that he drive M.A. to her vehicle, which was parked on Broadway Avenue. M.A. agreed and got into Jarvis's truck because even though it was not a long walk to her vehicle, she thought Jarvis was being polite on account of the cold temperature that night. But, Jarvis did not stop when his truck passed the location of M.A.'s parked vehicle. Rather, he continued driving for several miles as M.A. constantly asked Jarvis to stop and to explain why he had not stopped at her vehicle's location. Despite M.A.'s statements, Jarvis never responded and seemed "oblivious" to her.

{¶5} Approximately three miles from the location of M.A.'s vehicle, Jarvis stopped his truck when it reached a red light. M.A. got out of the truck at that point and started to walk back towards her vehicle's location. Jarvis backed his truck up, apologized, and M.A. decided to get

back into the truck so that he could drive her to her vehicle. Once back in the truck, though, Jarvis continued driving in the opposite direction of her vehicle. M.A. again demanded that Jarvis stop, which led to Jarvis hitting her on the face twice. He suddenly turned down a side street, which led M.A. to conclude that he was taking her to the woods and that she was going to die unless she got out of the truck.

{¶6} As a result, M.A. jumped out of the moving truck and her left shoulder hit the ground, which caused her to scream in pain. Jarvis then backed the truck up and it hit M.A.'s right shoulder blade. She thought that Jarvis was going to run over her so she sought help from a nearby homeowner, who said she would contact the police. Jarvis drove away as M.A. sought assistance.

{¶7} Detective Jacob Morris of the Lorain Police Department subsequently interviewed Jarvis regarding the incident with M.A. At first, Jarvis denied seeing M.A. on the day in question or giving her a ride in his truck. Later, though, Jarvis admitted to seeing M.A. He also admitted to driving her around in his truck, not allowing her to leave the truck, and punching her. Jarvis further said that it was possible that he hit M.A. while he was backing his truck up.

{¶8} This matter proceeded to a jury trial. The jury issued a guilty verdict on Counts I, II, and III alleged in the indictment. It, however, found Jarvis not guilty on Count IV. The trial court entered Jarvis's convictions and sentenced him to a total prison term of eight years. Jarvis filed this timely appeal, presenting three assignments of error for our review. Since the first and second assignments of error both implicate the sufficiency of the evidence for all of Jarvis's convictions, we elect to address them together.

II.

**Assignment of Error I**

**The verdicts for kidnapping, as defined by the court, in counts one and two were not supported by sufficient evidence.**

**Assignment of Error II**

**The verdict for felonious assault, as defined by the court, in count three was not supported by sufficient evidence.**

**{¶9}** In his first and second assignments of error, Jarvis argues that there is not sufficient evidence to support any of his convictions. We disagree.

A. Standard of Review

**{¶10}** A sufficiency challenge of a criminal conviction presents a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In carrying out this review, our "function * * * is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. After such an examination and taking the evidence in the light most favorable to the State, we must decide whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. Although we conduct de novo review when considering a sufficiency of the evidence challenge, we "neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570, C-120571, 2013-Ohio-4775, ¶ 33.

B. Kidnapping Convictions

{¶11} Jarvis was convicted on two counts of kidnapping, one for violating R.C. 2905.01(B)(1) and one for violating R.C. 2905.01(B)(2). These provisions pertinently provide as follows:

> No person, by force, threat, or deception * * * shall knowingly do any of the following, under circumstances that create a substantial risk of serious physical harm to the victim * * *:
>
> (1) Remove another from the place where the other person is found;
>
> (2) Restrain another of the other person's liberty.

Jarvis challenges the sufficiency of the evidence regarding the "substantial risk of serious physical harm to the victim" element of kidnapping. As a result, we limit our review of the evidence to this element.

{¶12} R.C. 2901.01(A)(8) defines "substantial risk" as "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." "Serious physical harm," meanwhile, is relevantly defined as including the following:

> (b) Any physical harm that carries a substantial risk of death;
>
> * * *
>
> (e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

R.C. 2901.01(A)(5).

{¶13} M.A. testified at length to the incident that gave rise to this matter and the fear that Jarvis's actions caused. After getting into the truck the second time, she described Jarvis refusing to take her back to her vehicle and punching her as follows:

Like, this guy is a psycho. Like, he just hit me like a man, like, in my eye. You know, it wasn't – it wasn't gentle at all. * * * [I]t wasn't just a punch. It was like, you know, "B[----], I'm an ex-Navy SEAL." I felt like, oh my God. What the hell?

* * *

I felt like he was trying to warn me or tell me, like, he's not one to mess with. You know, I felt like he was trying to give me a warning or tell me, like, how much of a man he is or how strong he is.

M.A. further testified as follows regarding her reaction to Jarvis's actions of punching her, refusing to stop, and turning down the side street towards the woods:

I really kind of just was thinking like he's going to kill me. I thought he was going to rape me, really. I felt like he was going to rape me, beat the s[---] out of me, choke me. I was imaging [sic] – I don't know what's going to happen. * * * I'm going to die. I'm going to die unless I get * * * out of this truck.

This fear led M.A. to jump out of the moving truck, which caused "excruciating" pain to the shoulder on which she landed. And, M.A.'s fear did not dissipate when she jumped out of Jarvis's moving truck, either, since she saw the truck's backup lights activated before the truck hit her shoulder blade. This action led M.A. to conclude that "he's going to run me over, that he's mad that I got out of the truck and now he's just going to finish whatever he wants to do."

{¶14} This testimony establishes that Jarvis restrained M.A.'s liberty, drove her far past the location where she requested, punched her, and caused her to fear death or other serious injury. Indeed, his actions caused M.A. to sustain excruciating pain when she jumped out of the truck to escape from him and landed on her shoulder. In light of this, we determine that there is sufficient evidence in the record to demonstrate that there was a substantial risk of serious physical harm to M.A. Consequently, we must conclude that sufficient evidence supports both of Jarvis's kidnapping convictions.

## C. Felonious Assault Conviction

{¶15} Jarvis was convicted on felonious assault for violating R.C. 2903.11(A)(1), which pertinently provides that "[n]o person shall knowingly * * * [c]ause serious physical harm to another[.]" Jarvis challenges the sufficiency of the evidence for his felonious assault conviction on two grounds: (1) there is no evidence showing that Jarvis knew M.A. would jump out of the truck; and (2) there is no evidence that she suffered serious physical harm. We reject both of these contentions.

{¶16} "An accused is presumed to intend the natural, reasonable, and probable consequences of his act." *State v. Jackson*, 8th Dist. Cuyahoga No. 80879, 2002-Ohio-5851, ¶ 60, citing *State v. Carter*, 64 Ohio St.3d 218, 226 (1992). We have previously determined that "[a] natural consequence of assaulting someone in an automobile is that she may attempt to escape the attack by escaping the vehicle." *State v. Bromley*, 9th Dist. Lorain Nos. 93CA005738, 93CA005739, 1994 WL 273259, * 2 (June 22, 1994). We see no reason to disregard this principle here. The record reflects that Jarvis kidnapped M.A. and punched her twice in the face, which allows a rational trier of fact to infer that he knew of his action's natural consequences, including that it would cause M.A. to escape the truck by jumping out of the truck. Thus, there is sufficient evidence in the record to show that Jarvis acted knowingly.

{¶17} There is also sufficient evidence to establish that M.A. suffered serious physical harm after she jumped from the truck. *See id.* ("[T]he injuries [the victim] suffered while escaping the car could be considered when determining whether she suffered serious physical harm."). M.A. testified that when she jumped from the truck, she landed on her shoulder, which caused "excruciating" pain that caused her to scream and cry. M.A. further testified that she was transported from the scene via ambulance and diagnosed with a fractured collarbone. Her

medical records were also entered into evidence. According to her testimony, her pain continued for months, prevented her from reaching behind her back, and affected her work as a hairdresser and as the caretaker for her young children. As a result, we conclude that Jarvis's felonious assault conviction is supported by sufficient evidence.

{¶18} In sum, there is sufficient evidence in the record to support Jarvis's kidnapping and felonious assault convictions. Accordingly, we overrule his first and second assignments of error.

**Assignment of Error III**

**The verdicts were against the manifest weight of the evidence.**

{¶19} In his third assignment of error, Jarvis contends that all of his convictions are against the manifest weight of the evidence. We disagree.

{¶20} A manifest weight of the evidence challenge is legally distinct from a sufficiency challenge. *Thompkins*, 78 Ohio St.3d at 387. Accordingly, when applying the manifest weight standard, we are required to consider the whole record, "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). Courts are cautioned to only reverse a conviction on manifest weight grounds "in exceptional cases," *State v. Carson*, 9th Dist. Summit No. 26900, 2013-Ohio-5785, ¶ 32, citing *Otten* at 340, when the evidence "weighs heavily against the conviction," *Thompkins* at 387.

{¶21} Jarvis's manifest weight challenge is based solely on "the multiple versions of events and lack of credibility of the complaining witness [M.A.]." However, after reviewing the

record, we cannot second-guess the jury's determination of credibility. The jury was free to believe M.A.'s testimony and it could resolve any inconsistencies in her favor. Moreover, the jury heard Detective Morris's testimony that Jarvis made a number of incriminating statements during his police interview, including that he punched M.A., restrained her, and possibly hit her with his truck. Indeed, Detective Morris explicitly testified that Jarvis's statements during the interview corroborated M.A.'s version of events. Consequently, we determine that Jarvis's convictions are not against the manifest weight of the evidence.

{¶22} Accordingly, we overrule Jarvis's third assignment of error.

### III.

{¶23} Having overruled all of Jarvis's assignments of error, we affirm the judgment of the Lorain County Court of Common Pleas.

Judgment affirmed.

─────

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JULIE A. SCHAFER
FOR THE COURT

WHITMORE, P.J.
MOORE, J.
CONCUR.

APPEARANCES:

NICHOLAS J. HANEK, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and MARY R. SLANCZKA, Assistant Prosecuting Attorney, for Appellee.