[Cite as *State v. Person*, 2016-Ohio-681.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 27600 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| MICHAEL T. PERSON | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 2014 02 0569 (A) |

DECISION AND JOURNAL ENTRY

Dated: February 24, 2016

SCHAFER, Judge.

{¶1} Defendant-Appellant, Michael Person, appeals the judgment of the Summit County Court of Common Pleas convicting him of rape, complicity to commit rape, felonious assault, and kidnapping and sentencing him to a total prison term of 41 years to life. For the reasons that follow, we affirm.

I.

{¶2} The Summit County Grand Jury indicted Person on the following counts: (1) one count of rape in violation of R.C. 2907.02(A)(2), a felony of the first degree; (2) two counts of complicity to commit rape in violation of R.C. 2907.02(A), 2923.03(A)(2), a felony of the first degree; (3) one count of felonious assault in violation of R.C. 2903.11(A)(1), a felony of the second degree; and (4) kidnapping in violation of R.C. 2905.01(A)(3), (A)(4), a felony of the first degree. Sexually violent predator specifications in violation of R.C. 2971.01(H) were attached to the rape and complicity to commit rape counts while sexual motivation specifications

in violation of R.C. 2971.01, 2941.147 were attached to the felonious assault and kidnapping convictions.

{¶3} The indictment arose from an incident that occurred during the late evening/early morning hours at Person's house after a house party broke up. Person negatively reacted to the interactions between S.M., his then-girlfriend, and other male attendees of the party. Once the other party guests were gone, except for Person's uncle who lived in the house, Person burned S.M.'s arm with a lit cigarette, dragged her into his bedroom, hit her and choked her, and ran a knife over her skin while threatening her. During the course of these events, Deandra Thomas, one of Person's acquaintances, arrived at the house. Upon his arrival, Person instructed S.M. to perform fellatio on Thomas and he ordered Thomas to have intercourse with her.[1] After Thomas stopped having intercourse with S.M., he punched her in the right eye and then left.

{¶4} S.M. felt compelled to stay the night at Person's house due to Person's threatening demeanor and he forced her to have intercourse with him. In the early afternoon on the day after the incident, an acquaintance picked S.M. up and she drove S.M. to Barberton Citizens Hospital, where she presented with the following injuries: multiple bruises and scratches, a burn on her left shoulder, a swollen right eye, bleeding in the white of her left eye, and a chipped tooth. After presenting with these injuries, S.M. was transported via ambulance to St. Thomas Hospital, where she underwent a sexual assault medical examination.

{¶5} Person waived the presentation of evidence to the jury regarding the sexually violent predator specifications. The matter then proceeded to a jury trial after which the jury found Person guilty of each count alleged in the indictment. The trial court subsequently conducted a hearing on the sexually violent predator specifications at which it reviewed

---

[1] The Grand Jury also indicted Thomas for his role in the incident. Although originally a co-defendant in this matter, the trial court decided to sever the trials for Thomas and Person.

statements that Thomas gave to police regarding the incident. After reviewing the evidence, the trial court determined that the sexually violent specifications were proven beyond a reasonable doubt. The State dismissed the sexual motivation specifications for the felonious assault and kidnapping charges.

{¶6} At sentencing, Person argued that his convictions were allied offenses of similar import and should be merged for the purposes of sentencing. However, the trial court rejected this argument and instead concluded that the offenses were not subject to merger as "[t]hey were all separate incidents with separate intent, separate animus, [and] separate conduct." The trial court ordered that Person's sentences for the rape, complicity to commit rape, and kidnapping charges run consecutively for a total prison term of 41 years to life.

{¶7} Person filed this timely appeal, presenting three assignments of error for our review. To facilitate our analysis, we elect to address the assignments out of order.

II.

**Assignment of Error III**

**Person's convictions are against the manifest weight of the evidence [] in violation of the Due Process Clause of the U.S. Constitution and Article I, Sections 1, 10, and 16 of the Ohio Constitution.**

{¶8} In his third assignment of error, Person argues that his felonious assault and kidnapping convictions were against the manifest weight of the evidence. We disagree.

**A. Standard of Review**

{¶9} When considering a manifest weight of the evidence challenge, we must review the whole record, "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be

reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). Courts are cautioned to only reverse a conviction on manifest weight grounds "in exceptional cases," *State v. Carson*, 9th Dist. Summit No. 26900, 2013-Ohio-5785, ¶ 32, citing *Otten* at 340, when the evidence "weighs heavily against the conviction," *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

## B. The Felonious Assault Conviction Is Not Against the Manifest Weight.

**{¶10}** Person was convicted of felonious assault in violation of R.C. 2903.11(A)(1), which pertinently provides that "[n]o person shall knowingly * * * cause serious physical harm to another[.]" He challenges his conviction on the basis that the State failed to prove S.M. suffered serious physical harm. The Revised Code relevantly defines serious physical harm as follows:

> [a]ny physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity[, a]ny physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement[, or a]ny physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

R.C. 2901.01(A)(5)(c)-(e).

**{¶11}** At trial, a variety of witnesses testified to their observations of S.M.'s injuries. The acquaintance who picked S.M. up from Person's house testified that she observed that S.M.'s "face was messed up and she had a swollen lip and a tooth was chipped in her mouth" and explained that she drove S.M. to the hospital as a result of the injuries. *See State v. Montgomery*, 8th Dist. Cuyahoga No. 102043, 2015-Ohio-2158, ¶ 12 ("'Where injuries to the victim are serious enough to cause him or her to seek medical treatment, the finder of fact may reasonably infer that the force exerted on the victim caused serious physical harm as defined by R.C. 2901.01(A)(5).'"), quoting *State v. Lee*, 8th Dist. Cuyahoga No. 82326, 2003-Ohio-5640, ¶

24. Officer Martin Eberhart of the Barberton Police Department similarly testified that when he made contact with S.M. at the hospital, he observed that S.M. "had visible bruisings on her face. You could tell she had been beat up." He further described her face as "swollen" and explained that "she had a cigarette burn to her shoulder area." Nurse Barbara Ross, who treated S.M. at Barberton Citizens Hospital, testified that S.M. presented with the following injuries:

> She had swelling and discoloration around the right eye and blood in the sclera of the left eye, which is the white part of the eye.
> She had a lump on the back of her head and a cigarette burn on her left shoulder and some swelling on the bridge of her nose.
>
> * * *
>
> She was black and blue. * * * The whole white of her eye was all red with blood. Her nose was swollen.

The State also offered pictures of S.M.'s injuries and her medical records into evidence. *See State v. Stillman*, 5th Dist. Delaware No. 04CAA07052, 2004-Ohio-6974, ¶ 24-25 (finding that victim suffered serious physical harm where "her face was swollen" and had "trauma to the eye").

{¶12} S.M. testified that after the party broke up, she sat in the kitchen with Person, who confronted her about the interactions with the other male attendees of the party. The confrontation escalated to the point that Person burned her shoulder with the lit cigarette that he was smoking, which left a scar that was still present on the day of trial, approximately eight months later. He then hit S.M. and grabbed her by the arm before taking her to his bedroom, where he continued to hit her. S.M. stated that Person was hitting "my face, in my head. He just kept hitting me." After hitting her, Person choked her, which "almost made [S.M.] pass out" before running a knife over her while "saying that he would cut [her] up in little pieces."

**{¶13}** During the course of these actions, Thomas arrived and had a discussion with Person who told him to engage in sexual relations with S.M. before leaving the bedroom. S.M. testified that after Thomas finished having intercourse, Person came back into the bedroom and told Thomas to hit her. S.M. said that Thomas then "hit me in my eye like full force back and hit me. I thought that he had knocked my eye out at first." She further described this as being "very, very painful" and she explained as follows regarding her pain the next day:

Q: How were you physically – how were you feeling?

A: Like I got ran over by a truck or something. I was in a lot of pain.

Q: Where was your pain?

A: All over in my eyes, my face, both of my eyes, the back of my head, like my body, everything was hurting.
But really what hurt the most was both of my eyes. I could barely see. They were like two slits, like I could barely see out of my eyes.

Moreover, S.M. indicated that her tooth was chipped during the incident and she had to have a dentist repair it. She also explained that she still had problems with her eyes on the day of trial and had to receive ongoing treatment from a specialist, who diagnosed her with posterior vitreous detachment since she "always [saw] these floating lights on the side of [her] eyes."

**{¶14}** Person's manifest weight argument rests on his contention that the record merely reflects that S.M. suffered "temporary discomfort and a 'shiner.'" But, our review of the record reveals that S.M. suffered much more serious injuries and that her injuries constituted serious physical harm. Consequently, we reject Person's argument that his felonious assault conviction weighs heavily against the evidence.

## C.  The Kidnapping Conviction Is Not Against the Manifest Weight.

{¶15} Person was convicted on kidnapping in violation of R.C. 2905.01(A)(3)-(4), which pertinently provides as follows:

> No person, by force, threat, or deception, * * * shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes: (3) [t]o terrorize, or to inflict serious physical harm on the victim * * *; (4) [t]o engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will[.]

Person only challenges the manifest weight of the evidence relating to S.M. being restrained against her will.

{¶16} S.M. testified in detail as to the actions Person took to restrain her.  She said that the first instance of restraint was as follows: "[Person] grabbed me by my arm and took me to the back to his room.  We were in the kitchen, and he took me to the back to his room and started hitting me."  After Person choked her and threatened her with the knife in the bedroom, S.M. testified, "I thought he was going to kill me."  Indeed, S.M. was so scared during this situation that she urinated on herself.  After Thomas left the bedroom, Person again threatened S.M. by saying, "Now you see how s[---] can go down?  You see that I got a group that will do whatever for me."  He also told S.M. that she "better be glad that his brother ain't here because his brother would have said to just get rid of [her.]"

{¶17} Person points out that S.M. had opportunities to leave the house or seek assistance, which purportedly shows that she was not restrained against her will.  Indeed, S.M. acknowledged during her testimony that Person asked whether she wanted him to get a ride for her and she did not take the opportunity.  But, she explained her decision as follows:

> [W]hen he said that, it wasn't a question of I can really leave.  His body language let me know that wasn't an option for me to leave, because when he asked did I want to go or did I want to stay, he stood up in my face and had a mug on his face and said, "Do you want to leave or do you want to stay?"

And he kind of like flexed. And I knew if I answered the question wrong, then it was going to be wrong, round two it was all going to start all over again.

She further testified that Person's actions left her too scared to call 911 or to leave until the early afternoon of the next day "[b]ecause I thought that would be the best time, the best time, if any, I guess. I just thought, you know, I had to take some type of opportunity." S.M. also testified that she sent text messages to Person that had a friendly tone because she did not want to alert him that she was upset and contemplating going to the police. The jury appears to have accepted S.M.'s explanation and we see no reason in the record to disturb that determination. *See State v. Jarvis*, 9th Dist. Lorain No. 14CA010667, 2015-Ohio-4219, ¶ 21 (rejecting manifest weight challenge since "[t]he jury was free to believe [the victim]'s testimony and it could resolve any inconsistences in her favor"). Consequently, we determine that Person's kidnapping conviction is not against the manifest weight of the evidence.

{¶18} Accordingly, we overrule Person's third assignment of error.

### Assignment of Error II

**The trial court erred as a matter of law when it reviewed a recorded statement of the co-defendant in violation of the due process clause of the 6th and 14th Amendments to the U.S. Constitution and Article I, Sections 1, 10, & 16 of the Ohio Constitution.**

{¶19} In his second assignment of error, Person argues that the trial court erred in reviewing Thomas's out-of-court statements when considering whether the sexually violent predator specifications were proven. Specifically, Person asserts that the consideration of these statements violated his right to confront witnesses. We agree that the trial court erred in considering Thomas's out-of-court statements, but we determine that the trial court's error was harmless beyond a reasonable doubt.

**A. The Admission of the Statements Violated the Confrontation Clause.**

{¶20} We review the trial court's admission of evidence over a Confrontation Clause objection de novo. *State v. McNair*, 9th Dist. Lorain No. 13CA010485, 2015-Ohio-2980, ¶ 36, quoting *State v. Myers*, 9th Dist. Summit No. 25737, 2012-Ohio-1820, ¶ 21. The Confrontation Clause guarantees a criminal defendant the right "to be confronted with the witnesses against him." Sixth Amendment to the United States Constitution. The Ohio Constitution also provides criminal defendants with the right to confront witnesses in Article I, Section 10. *Toledo v. Sails*, 180 Ohio App.3d 56, 2008-Ohio-6400, ¶ 12 (6th Dist.). The import of these protections is that they "require[], wherever possible, testimony and cross-examination to occur at trial." *Myers* at ¶ 21, citing *State v. Allen*, 8th Dist. Cuyahoga No. 82556, 2004-Ohio-3111, ¶ 17.

{¶21} Nevertheless, "the right to confrontation is not absolute and 'does not necessarily prohibit the admission of hearsay statements against a criminal defendant.'" *State v. Madrigal*, 87 Ohio St.3d 378, 385 (2000), quoting *Idaho v. Wright*, 497 U.S. 805, 813 (1990). Accordingly, the United States Supreme Court has limited the Confrontation Clause as only barring the admission of "testimonial" hearsay. *Crawford v. Washington*, 541 U.S. 36, 68 (2004). In *Crawford*, the Court stated that "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." *Id*. at 68-69. Although the Court left the exact definition of "testimonial" an open question, it did state that the term "applies at a minimum * * * to police interrogations." *Id*. at 68. Since *Crawford*, the Court has "labored to flesh out what it means for a statement to be 'testimonial.'" *Ohio v. Clark*, __ U.S. __, 135 S.Ct. 2173, 2179 (2015). In *Hammon v. Indiana*, 547 U.S. 813 (2006), the Court provided the following distinction between testimonial and nontestimonial statements:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Id.* at 822. Moreover, the Court recently declared that an out-of-court statement is testimonial, where "in light of all the circumstances, viewed objectively, the 'primary purpose' of the conversation [giving rise to the out-of-court statement] was to 'create an out-of-court substitute for trial testimony.'" *Clark* at 2180, quoting *Michigan v. Bryant*, 562 U.S. 344, 358 (2011).

{¶22} Here, Thomas's out-of-court statements came within the context of a police interrogation conducted by Detective Stephen Coburn of the Barberton Police Department. The interrogation occurred 23 days after the incident that occurred at Person's home and Detective Coburn described its purpose as follows:

> Detective Coburn:     * * * Okay. Here's the deal: Your name got brought up in an investigation that I'm working from one of your dudes, okay. I know you know this guy, but I want to know if you're a part of this or not, okay.
>
> Mr. Thomas:   What investigation?
>
> Detective Coburn:     Well, I'm investigating a rape, kidnapping and felonious assault that one of your dudes threw you under the bus for.

Thomas went on to describe portions of the incident at Person's house that occurred when Thomas was present. Based on these facts, it is apparent that Thomas's statements during the course of the police interrogation did not relate to an ongoing emergency and rather were regarding past events potentially relevant to later criminal prosecution. As a result, we conclude that Thomas's statements during the interrogation were testimonial in nature and that their admission violated Person's Confrontation rights. *See State v. Gerald*, 4th Dist. Scioto No. 12CA3519, 2014-Ohio-3629, ¶ 61 (determining that out-of-court statements made by co-

defendants during police interrogation were testimonial and subject to Confrontation Clause scrutiny).

## B. The Admission of the Statements Was Harmless Error.

**{¶23}** Our determination that the trial court erred in admitting Thomas's out-of-court statements during the police interrogation does not end our inquiry. Rather, Confrontation Clause violations are subject to harmless error analysis. *McNair*, 2015-Ohio-2980, at ¶ 33. "This inquiry is not simply a sufficiency of the remaining evidence inquiry; rather, the question is whether there is a reasonable probability that the evidence complained of might have contributed to the conviction." *Madrigal* at 388; *see also State v. McCarley*, 9th Dist. Summit No. 23607, 2008-Ohio-552, ¶ 19 (applying harmless error test described in *Madrigal*). Recently, the Ohio Supreme further delineated the proper scope of harmless error review as follows:

> First, it must be determined whether the defendant was prejudiced by the error, i.e., whether the error had an impact on the verdict. Second, it must be determined whether the error was harmless beyond a reasonable doubt. Lastly, once the prejudicial evidence is excised, the remaining evidence is weighed to determine whether it establishes the defendant's guilt beyond a reasonable doubt.

*State v. Harris*, 142 Ohio St.3d 211, 2015-Ohio-166, ¶ 37, citing *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, ¶ 22-25, 27-28.

**{¶24}** To properly perform this review in this matter, we must consider R.C. 2971.01(H)(1), which states that "'[s]exually violent predator' means a person who, on or after January 1, 1997, commits a sexually violent offense and is likely to engage in the future in one or more sexually violent offenses." This provision implicates R.C. 2971.01(H)(2), which pertinently provides as follows:

> For the purposes of division (H)(1) of this section, any of the following factors may be considered as evidence tending to indicate that there is a likelihood that the person will engage in the future in one or more sexually violent offenses:

* * *

(d) The person has committed one or more offenses in which the person has tortured or engaged in ritualistic acts with one or more victims.

* * *

(e) Any other relevant factor.

"'[O]nly one of the factors listed in R.C. 2971.01(H)(2)(a)-(f) had to be shown for the trial court to find that [the defendant] is a sexually violent predator.'" *State v. Wooten*, 9th Dist. Lorain No. 13CA010510, 2014-Ohio-3980, ¶ 39, quoting *State v. Cartwright*, 12th Dist. Preble No. CA2012-03-003, 2013-Ohio-2156, ¶ 27.

**{¶25}** Here, S.M. testified that Person burned her with a cigarette, strangled her, used a knife while threatening her, restrained her against her will, and raped her. Also, the medical records and testimony of the witnesses who saw S.M. after she left Person's house were consistent with S.M.'s testimony regarding her injuries. Consequently, we conclude that this remaining evidence, without reference to Thomas's statements, established beyond a reasonable doubt that Person was guilty of the sexually violent predator specifications pursuant to R.C. 2971.01(H)(2)(d), (f). As a result, any error in the admission of Thomas's statements was harmless. *See Madrigal*, 87 Ohio St.3d at 388 (determining that admission of evidence despite Confrontation Clause violation was harmless since other witnesses testified to the same facts giving rise to the defendant's conviction); *McNair*, 2015-Ohio-2980, at ¶ 34 (concluding that remaining evidence established the defendant's guilt and thus any error in the admission of evidence that violated the Confrontation Clause was harmless).

**{¶26}** Accordingly, we overrule Person's second assignment of error.

**Assignment of Error I**

**The trial court erred as a matter of law in imposing separate sentences upon Person in violation of the Double Jeopardy Clause of the 5th Amendment to the U.S. Constitution and Article I, Section[] 10 of the Ohio Constitution.**

**{¶27}** In his first assignment of error, Person contends that the trial court erred by sentencing him on allied offenses of similar import. Specifically, Person asserts that, for the purposes of sentencing, his rape and kidnapping convictions should merge while his felonious assault and kidnapping convictions should merge. We disagree.

**A. Standard of Review**

**{¶28}** We apply de novo review when considering a trial court's decision regarding merger of convictions for the purposes of sentencing. *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, ¶1. "R.C. 2941.25 codifies the protections of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution, which prohibits multiple punishments for the same offense." *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, ¶ 23. The statute provides as follows:

> (A) When the same conduct by the defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

R.C. 2941.25. Two or more offenses may result in multiple convictions if any of the following is true: "(1) the offenses are dissimilar in import or significance – in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, and (3) the offenses were committed with separate animus or motivation." *State v. Ruff*, 143 Ohio St.3d

892, 2015-Ohio-995, ¶ 25. This inquiry "is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct." *Id*. at ¶ 26.

### B. The Rape and Kidnapping Convictions Should Not Merge.

{¶29}  Person argues that his rape and kidnapping convictions should merge because the record demonstrates that the restraint of S.M. was incidental to the rape that he committed. We reject this argument since a review of the record establishes that Person's kidnapping of S.M. was separate from the subsequent rape that occurred and was motivated by a separate animus. The incident started with both Person and S.M. in the kitchen, which was open to the rest of the house. Although Person's guests had left, his uncle remained in the house. After Person's confrontation with S.M. over her interactions with the party's other male attendees escalated to the point that he burned S.M. with his cigarette and hit her, he dragged her by the arm into his bedroom before closing the door. And, after Thomas arrived and Person gave him permission to "do what [he] want[ed]" with S.M., Person increased the volume of the music that was playing in an effort to obscure any noise made by S.M. These facts suggest that Person committed the kidnapping to isolate S.M. in his bedroom away from the open kitchen and Person's uncle so that he could continue to inflict terror upon her. *See State v. Portman*, 2d Dist. Clark No. 2013-CA-68, 2014-Ohio-4343, ¶ 42 (determining that trial court did not err in refusing to merge rape and kidnapping convictions where the defendant led the victim "to a lounge-type area in the basement" that "was more isolated from other parts of the store" before threatening her and keeping her from leaving).

{¶30}  When she was in the bedroom, Person threatened to kill her and he beat her, strangled her, and ran a knife over her skin before aiding and abetting Thomas's rape of S.M. After returning to the bedroom upon Thomas's exit, Person again threatened S.M., which kept

her in a state of fear that prevented her from leaving, and he forced her to have sexual relations against her will. In total, the record reflects that Person kept S.M. in his bedroom for several hours before he raped her. *See State v. Evans*, 9th Dist. Medina No. 07CA0057-M, 2008-Ohio-4772, ¶ 27 ("[T]here is substantial evidence that [the victim]'s restraint was prolonged and secretive so as to establish a separate animus for the kidnapping and rape."). Due to these facts in the record, we conclude that the trial court did not err in refusing to merge Person's rape and kidnapping convictions. *See State v. Fox*, 5th Dist. Delaware No. 14 CAA10 0065, 2015-Ohio-3515, ¶ 36 (determining that kidnapping conviction under R.C. 2905.01(A)(3) did not merge with rape conviction under R.C. 2907.02(A)(2) since "the initial restraint had an independent significance apart from the rapes [as the victim] was initially restrained for the purpose of interrogation and to terrorize him [and a] lengthy period of interrogation and torture occurred prior to the first act of rape").

{¶31} In support of his contention, Person cites to *State v. Logan*, 60 Ohio St.2d 126 (1979), and *State v. Kirby*, 9th Dist. Summit No. 27060, 2014-Ohio-5643. But, both of these cases involve markedly different facts that render them distinguishable from this matter. In *Logan*, the defendant held a knife to the victim's throat, forced her into an alley around a corner and down a flight of stairs, where he raped her. Immediately after the rape, the defendant released the victim. *Logan* at 127. The Supreme Court of Ohio determined that since "[t]he detention was brief, the movement was slight, and the victim was released immediately following the commission of the rape[,]" the defendant's rape and kidnapping convictions were subject to merger. *Id*. at 135. Similarly, in *Kirby*, the defendant "pulled out a box cutter[] and restrained [the victim] with the box cutter while raping her." *Kirby* at ¶ 27. Based on these facts, this Court concluded that the defendant's convictions for rape and kidnapping were subject to

merger since "the record evidences that the crimes took place in a single place with little to no movement [and] there is nothing in the record to suggest that the restraint was prolonged." *Id*. Unlike the victims in *Logan* and *Kirby*, the victim in this case, S.M., was subjected to a prolonged detention as a result of the kidnapping and Person's restraint of her did not simply occur while the rape occurred. These critical differences render *Logan* and *Kirby* inapplicable in this matter and we determine that these cases do not support reversal of the trial court's merger determination.

### C. The Felonious Assault and Kidnapping Convictions Should Not Merge.

{¶32} Person likewise asserts that his kidnapping and felonious assault convictions should merge because his actions of hitting and burning S.M. with a lit cigarette before dragging her into the kitchen were part of one continuous course of conduct. We also reject this assertion since the record reflects that S.M. was restrained against her will for hours and it involved not just these actions but a variety of others. As stated above, Person threatened S.M. by saying that he would cut her into pieces and he pointed out the window to where he would bury her body. He repeatedly hit her, he choked her, and he aided and abetted Thomas's assault and rape of S.M before raping her himself. Moreover, Person restrained S.M. against her will over the span of several hours. In light of these facts, we agree with the trial court's determination that the kidnapping and felonious assault were committed separately and resulted from separate animus. *See State v. Harmon*, 9th Dist. Summit No. 26502, 2013-Ohio-1769, ¶ 24-25 (determining that the defendant's kidnapping conviction under R.C. 2905.01(A)(3) and felonious assault conviction under R.C. 2903.11(A)(1) were not allied offenses of similar import where "the trial court could have concluded that the kidnapping and felonious assault were committed separately

because the kidnapping occurred over an extended period of time and, thus, was not merely incidental to the felonious assault").

**{¶33}** Accordingly, we overrule Person's first assignment of error.

### III.

**{¶34}** Having overruled all of Person's assignments of error, we affirm the judgment of the Summit County Court of Common Pleas.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

---

JULIE A. SCHAFER
FOR THE COURT

HENSAL, P. J.
CARR, J.
<u>CONCUR.</u>


<u>APPEARANCES:</u>

PAUL GRANT, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RACHEL M. RICHARDSON, Assistant Prosecuting Attorney, for Appellee.